# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY E. REDICK III,<br><br>      Plaintiff,<br><br>   v.<br><br>LOWE'S HOME CENTERS, LLC,<br><br>      Defendant. | Case No.  1:21-cv-00358-SAB<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANT AND CLOSE CASE<br><br>(ECF Nos. 54, 55, 57, 59, 60, 61, 62) |

## I.

## INTRODUCTION

Currently before the Court are the parties' cross-motions for summary judgment.  (ECF Nos. 54, 57.)  Having considered the moving, opposition, and reply papers, the declarations and exhibits attached thereto, the parties' statements of undisputed and disputed facts, the submitted evidence, as well as the Court's file, the Court issues the following order granting Defendant's motion for summary judgment, denying Plaintiff's motion for summary judgment, and directing the Clerk of the Court to enter judgment in favor of Defendant and close this case.

/ / /

/ / /

1

**II.**

**BACKGROUND**

Plaintiff Stanley E. Redick, III, proceeding *pro se* and *in forma pauperis*, filed this action on March 8, 2021, against Lowe's Corporation.  This action was initially assigned to District Judge Dale Drozd and Magistrate Judge Helena M. Barch-Kuchta.  On May 6, 2021, Plaintiff filed a first amended complaint, naming Lowe's Home Centers, LLC, as the correct Defendant (hereinafter "Lowe's" or "Defendant").  (ECF No. 10.)[1]  On May 28, 2021, the Court issued an order directing Lowe's Corporation be terminated to reflect the status of the amended complaint. (ECF No. 11.)

On June 8, 2021, the Court issued an order for Plaintiff to show cause why the action should not be dismissed for lack of subject matter jurisdiction.  (ECF No. 12.)  Plaintiff was directed to file a second amended complaint or notice of voluntary dismissal.  (Id.)  Plaintiff filed a second amended complaint on June 17, 2021.  (EC No. 13.)  On June 25, 2021, Defendant filed a notice of related case, and this action was reassigned to "Unassigned" ("NONE") as the District Judge and to U.S. Magistrate Judge Stanley A. Boone.  (ECF No. 16.)

On August 5, 2021, the Court screened Plaintiff's second amended complaint and found that it stated a cognizable claim against Defendant only for a violation of the Tom Bane Civil Rights Act, California Civil Code § 52.1 ("Bane Act").  (ECF No. 19.)  Plaintiff was granted an opportunity to amend his complaint or notify the Court that he is agreeable to proceeding only on the Bane Act claim identified as cognizable.  (Id.)  On August 19, 2021, Plaintiff filed a third amended complaint.  (ECF No. 21.)  However, on August 23, 2021, Plaintiff notified the Court that he wished to proceed only on the Bane Act claim and to withdraw the third amended complaint.  (ECF No. 22.)  On August 24, 2021, the Court issued findings and recommendations recommending that this action only proceed on the Bane Act claim; that all other claims and defendants be dismissed for the reasons stated in the Court's August 5, 2021 screening order; and that Plaintiff's third amended complaint be withdrawn.  (ECF No. 24.)  On September 21, 2021,

---

[1]  All references herein to pagination of electronically filed documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1   the District Judge adopted the Court's finding and recommendations, and this action now

2   proceeds against Defendant on the Bane Act claim only.  (ECF No. 25.)

3          On October 26, 2021, noting it had come to the Court's attention that although the

4   Defendant filed a notice of related action in this case (ECF No. 6), Defendant was never served

5   in this action prior to being assigned to the undersigned, and the Court authorized and directed

6   Plaintiff to complete service documents.  (ECF No. 26.)  On December 7, 2021, Defendant filed

7   an answer.  (ECF No. 34.)  On January 21, 2022, pursuant to the parties' consent, this action was

8   reassigned to Magistrate Judge Stanley A. Boone to conduct all further proceedings including

9   trial and entry of final judgment.  (ECF No. 43.)

10         On January 23, 2022, the Court issued a scheduling order, setting a deadline of

11  September 30, 2022, for the filing of dispositive motions.  (ECF No. 44.)  On September 23,

12  2022, Plaintiff filed a motion for summary judgment, and a declaration in support.  ("Pl.'s MSJ",

13  ECF No. 54; "Pl.'s MSJ Decl.," ECF No. 55.)  Plaintiff also submitted a flash drive with

14  deposition transcripts and video files.  (ECF No. 56.)  On September 29, 2022, Defendant filed a

15  motion for summary judgment, a memorandum in support, and a separate statement of

16  undisputed facts.  ("Def.'s MSJ", ECF No. 57; "Def.'s Mem.," ECF No. 57-1; ECF No. 57-2.)

17  Defendant's motion was set for hearing on November 9, 2022.  On September 30, 2022, the

18  Court received a disc containing additional evidence from Defendant.  (ECF No. 58.)   On

19  October 6, 2022, Defendant filed an opposition to Plaintiff's motion for summary judgment, as

20  well as a notice of errata pertaining to the Defendant's motion for summary judgment.  ("Def.'s

21  Opp'n," ECF No. 59; ECF No. 60.)[2]  On October 17, 2022, Plaintiff filed an opposition to the

22  Defendant's motion for summary judgment.  ("Pl.'s Opp'n," ECF No. 61.)  On October 24,

23  2022, Defendant filed a reply to Plaintiff's opposition.  ("Def.'s Reply," ECF No. 62.)  On

24  _____

25  [2]  Defendant's notice of errata specifies that as for the evidence cited in support of Defendant's undisputed facts
    numbers 12 through 16, the references in the supporting evidence section to "Appendix, Exhibit H," should be
26  corrected to read "Appendix, Exhibit J."  On October 28, 2022, Plaintiff filed what appears to be an objection that
    the notice of errata was filed after the September 30, 2022, filing deadline for dispositive motions.  (ECF No. 63.)
27  Plaintiff has not identified any specific prejudice in the ability to file his opposition or to the specific proffered
    undisputed facts and the referenced exhibits.  The Court finds the error did not prejudice Plaintiff, and further, the
28  submitted undisputed facts 12 through 16 reference multiple forms of evidence in support, including Plaintiff's
    deposition as to each proffered fact.

1  October 28, 2022, Plaintiff filed a response objection to the Defendant's notice of errata.  (ECF

2  No. 63.)

3  On November 1, 2022, the Court found the motions for summary judgment suitable for

4  decision without oral argument pursuant to Local Rule 230(g), and vacated the November 9,

5  2022, hearing that was set for Defendant's motion.  (ECF No. 64.)  Plaintiff's motion was never

6  set for hearing.  (Id.)  On November 17, 2022, in light of the pending cross-motions for summary

7  judgment, the Court continued the pretrial conference in this matter from November 29, 2022, to

8  December 16, 2022, in Courtroom 9.  (ECF No. 65.)

9                                                                **III.**

10                                                   **LEGAL STANDARD**

11  Any party may move for summary judgment, and the Court shall grant summary

12  judgment if the movant shows that there is no genuine dispute as to any material fact and the

13  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks

14  omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Summary

15  judgment must be entered "against a party who fails to make a showing sufficient to establish the

16  existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317,

17  322 (1986).  "[A] party seeking summary judgment always bears the initial responsibility of

18  informing the district court of the basis for its motion, and identifying those portions of 'the

19  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

20  affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

21  Celotex Corp., 477 U.S. at 322.

22  If the moving party meets its initial responsibility, the burden then shifts to the opposing

23  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita

24  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Each party's position,

25  whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular

26  parts of materials in the record, including but not limited to depositions, documents, declarations,

27  or discovery; or (2) showing that the materials cited do not establish the presence or absence of a

28  genuine dispute or that the opposing party cannot produce admissible evidence to support the

fact.  Fed. R. Civ. P. 56(c)(1).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

"In judging the evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence," Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citation omitted), and it "must draw all reasonable inferences in favor of the non-moving party, and determine whether a genuine issue of material fact precludes entry of summary judgment," Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (citations omitted).

**IV.**

**DISCUSSION**

**A.    Plaintiff's Allegations in the Complaint**

In most relevant part, Plaintiff's second amended complaint alleges Defendant falsely accused Plaintiff of being involved in a shoplifting incident at the Lowe's Sonora store that occurred on November 3, 2018, when Plaintiff visited the store on November 10, 2018.  (ECF No.13 at 5-6.)  Plaintiff claims Defendant had Plaintiff arrested and falsely detained based on false police reports that were not based on probable cause, restricting his liberty and falsely holding him liable for crimes he did not commit.  (Id.)  Plaintiff alleges that on November 10, 2018, Defendant improperly stated Plaintiff committed a crime, leading to a false warrant, false arrest, and false imprisonment for crimes he never committed, as he was not at Lowe's on November 3, 2018, nor involved in criminal activity on November 10, 2018.  Plaintiff requests the Court hold Defendant "accountable for violations under the Bane Act 52.1 for committing humiliator battery against me for a[n] illegal search and seizure being an accused citizen and not a guilty party."  (Id. at 6.)

**B.    Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment on Plaintiff's sole cause of action for violation of the Bane Act.  Defendant submits the uncontroverted facts establish: (1) the Bane Act cause of

action is barred by California Civil Code Section 47(b); (2) the Bane Act cause of action is barred by the California Supreme Court's holding in Jones v. Kmart, 17 Cal.4th 329 (1998) ("Jones v. Kmart"); and (3) Plaintiff cannot establish one or more elements of the Bane Act cause of action because he cannot show that Lowe's interfered with his exercise of his Fourth Amendment rights, cannot show that Lowe's engaged in any conduct amount to threats, intimidation or coercion actionable under the Bane Act, and cannot show that Lowe's acted with the specific intent of interfering with Plaintiff's Fourth Amendment rights.  (ECF No. 57 at 2.)

### 1.   Preliminary Discussion of Plaintiff's Opposition

The Court finds it helpful to first summarize and preliminarily address Plaintiff's opposition, so that the Court may more competently discuss Defendant's submitted undisputed facts and legal arguments.  In sum, Plaintiff's opposition is not, in large part, directly applicable to or relevant to the actual factual and legal proffers in the Defendant's motion.

For example, the very first citation in Plaintiff's opposition is a reference to the California Rules of Court permitting augmentation of the record for appellate review, that is not applicable to the motion.  (Pl.'s Opp'n at 2-3.)  It appears Plaintiff is citing the rule and related caselaw for the proposition that the Court cannot grant summary judgment based on its own determination of the credibility of conflicting declarations and exhibits.  (Id. at 3.)

The only factual inconsistency reasonably pointed to by Plaintiff in opposition, relate to the declarations of Sarah Budrow ("Budrow"), Lowe's former loss prevention manager, as discussed herein.  Plaintiff focuses the Court on her statements pertaining to the manner of reporting to the police on November 10, 2018.  Plaintiff argues the contradiction by Budrow shows that Lowe's had a manager with questionable mental status that was allowed to interfere with Plaintiff's civil rights.  (Pl.'s Opp'n 4.)  Plaintiff also proffers the Defendant "had" Plaintiff questioned outside the entrance when Defendant was less than 10 feet away, and not 75 feet away as they stated.  Even agreeing with the Plaintiff that the declarations are inconsistent in such regard, this does not change the conclusion of granting the motion for summary judgment in favor of Defendant, for the reasons explained throughout this order.

Plaintiff argues probable cause could have only been established by the presiding

1   criminal judge.  (Opp'n 3.)   However, probable cause for Plaintiff's arrest is not a relevant

2   standard determinative to the Bane Act violation under the standards discussed below, for the

3   purposes of this claim and facts.  (Opp'n 3.)

4       Plaintiff argues Defendant does not have immunity under the Bane Act, because the Act

5   applies to all persons.  The Court's decision below does not depend on an assumption that the

6   Bane Act does not apply to all persons, but rather under the applicable standards, Plaintiff cannot

7   maintain a Bane Act claim on the established undisputed facts.

8       Plaintiff suggests that Police Officer Scott Mallon's ("Mallon") request for identification

9   left Plaintiff with no option to say no, essentially engaging in a "quid pro quo harassment" due to

10  the Defendant's false allegations.  Plaintiff argues the Bane Act can apply where there is false

11  arrest and detainment as in this case.  Plaintiff cites to case law for the proposition that liability

12  can apply where there is interference with legal rights by threats, intimidation, or coercion, and

13  argues that Defendant is liable for the interference and a two year criminal battle.   Finally,

14  Plaintiff suggests the Defendant attempts to say they satisfy the "[r]equirements without further

15  discovery could raise [d]isputed facts that are material," and "[w]ithout 'facts' and 'evidence',

16  the lack of genuine issue of material [f]acts is difficult to prove and must be considered by [t]he

17  Court[] as a great argument to assert during an Appeal if need be by me the Plaintiff."  (Opp'n

18  7.)[3]  For the reasons explained below, under the legal standards applicable to the Plaintiff's Bane

19

20  [3]  In response to this proffer, Defendant replies that to the extent the Court might be inclined to consider certain "confusing and uncertain statements in Plaintiff's opposition as a request for further discovery, Plaintiff has failed to

21  make the showing required to justify postponing a ruling on Defendant's motion."  The Court agrees with Defendant that no further delay is warranted and summary judgment may be properly entered for Defendant at this time.

22  Specifically, the Local Rule pertaining to summary judgment provides that "[i]f a need for discovery is asserted as a basis for denial of the motion [for summary judgment], the party opposing the motion shall provide a specification of the particular facts on which discovery is to be had or the issues on which discovery is necessary."  L.R. 260(b).

23  Plaintiff has not satisfied the requirements for justifying denial of summary judgment on such grounds.  Id.; see also Tatum v. City & Cnty. of San Francisco, 441 F.3d 1090, 1101 (9th Cir. 2006) ("Absent a showing by Tatum that

24  additional discovery would have revealed specific facts precluding summary judgment, the district court did not abuse its discretion by denying Tatum's request for a continuance under Rule 56(f).").  For the same reason, the

25  Court rejects Plaintiff's suggestion that summary judgment is improper because if Plaintiff's witnesses are able to go under oath in trial even more evidence will be presented and more evidence will come out during trial that will

26  undeniably prove the Defendant is liable.

27  Plaintiff also proffers to the Court that his mother, a retired law enforcement spent her retirement to help Plaintiff fight the case against the Defendant and Defendant should face liability.  The Court understands Plaintiff's sustained

28  statements concerning the impact of these events on his life, and that he maintains his innocence.  However, the actions taken by Lowe's do not constitute a violation of law against Plaintiff or demonstrate civil liability.  The

1  Act claim, and the undisputed facts established through the evidence presented to the Court, the

2  Court must reject these arguments, and finds Defendant's motion for summary judgment is

3  properly granted.

4         The Court finds it useful to summarize the Plaintiff's arguments made regarding the

5  Defendant's proffered undisputed facts, prior to setting forth the Defendant's facts and engaging

6  in a more specific discussion.   However, Plaintiff's opposition section entitled rebuttal to

7  Defendant's undisputed facts does not clearly make pointed objections to Defendant's specific

8  facts.

9         Plaintiff argues first, as for the general proffer that Budrow reported the November 3,

10  2018 criminals were in the store on November 10, 2018, that the body camera evidence verifies

11  that the caller on November 10, 2018, Budrow, did "intentionally report these claims against me

12  the Plaintiff in this case."  (Opp'n 7.)  Plaintiff then appears to reference that a police report

13  indicates that Budrow reported on November 10, 2018, a "Team Shirt" was worn, and the

14  Defendant's "attempt to use speculative accusations as to the apparel w[o]rn in this case as a

15  defense to accusing the wrong person intentionally as committing a crime should be considered

16  moot[,] and not a[n] affirmative defense as the LIABILITY will always fall on the Defendants

17  for the damage they cause to me."  (Opp'n 8.)

18         Plaintiff again references the "team Shirt" in the incident report, and argues Defendant

19  never said "kings" shirt in the report and thus intentionally accused him of being a criminal.

20  (Opp'n 9-10.)  Plaintiff argues that a suggestion he was returning stolen items is false without the

21  evidence being taken into custody of the materials he was attempting to exchange, and thus

22  Defendant could not confirm the material was stolen as stated by Budrow.

23

24  Court emphasizes to the Plaintiff that this decision *does not depend* on whether Plaintiff was involved in the events
that occurred on November 3, 2018.  Whether or not Plaintiff was even present at the Lowe's store on November 3,

25  2018, is not determinative to the Court's decision herein, based on the law applicable to the Plaintiff's sole cause of
action for violation of the Bane Act, and the undisputed facts.  The principal reasons for the Court's determination is

26  that the Court finds it undisputed that Defendant's employee contacted the police and reported a theft occurred on
November 3, 2018; that on November 10, 2018, Defendant's employee alerted police that the suspect, or an
individual that resembled the suspect from November 3, 2018, was present; and that on and after November 10,

27  2018, the police conducted an independent investigation and made a decision that probable cause existed to charge
Plaintiff with a crime and that an arrest warrant should issue against Plaintiff for the alleged shoplifting incident that

28  occurred on November 3, 2018.

1    As discussed in greater detail below, Plaintiff points to inconsistent declarations from

2    Budrow, to argue they show it is a contested fact as to what happened as Officer Mallon was in

3    fact in Budrow's office on November 10 2018 reviewing video with Budrow when Plaintiff

4    entered the store, but rather Mallon was dispatched to the store after Plaintiff was at the store.

5    (Opp'n 10-11.)  Plaintiff argues this leaves all the undisputed facts by the Defendant with regard

6    to these statements questionable and disputable.

7    Plaintiff argues that Budrow's statement in an attached incident report that Plaintiff "had

8    no sales receipt and was attempting to return the flooring for Cash,"[4] contradicts the Defendant's

9    argument it did not use coercion in intentional attempts to hold Plaintiff accountable for crimes

10   he did not commit.  Plaintiff argues Defendant does not have evidence that Plaintiff attempted to

11   return the flooring for cash and it is not true and there is no evidence, especially if Budrow had

12   no personal interaction with Plaintiff.  Plaintiff states that although Defendant did not physically

13   touch him,[5] violence can be threat to submission humiliation, or psychosocial harm.  (Opp'n 12.)

14   Plaintiff emphasizes it was the Defendant's act that caused Mallon to come to the store and

15   obstruct his rights to freedom and violate other civil rights.

16   Plaintiff suggests that Budrow was not in office with Mallon as body cam video shows

17   Budrow waiting outside 10 feet away from Plaintiff leaving the store, and Budrow is seen in the

18   video standing behind Plaintiff intentionally making Mallon stop Plaintiff violating his civil

19   rights.  (Opp'n 13.)  In sum, Plaintiff argues that the Defendant's specific intent was to hold

20   Plaintiff liable for the November 3, 2018 theft, and Defendant desired to call the police and

21   intended that act would achieve the end result of having Plaintiff questioned by police and

22   arrested and incarcerated for the November 3 theft, a violation of civil rights by specific intent,

23   and the act of making false accusations on an innocent victim is enough to prove intent.  (Opp'n

24   15.)

25   / / /

---

[4]  The Court notes that Defendant does not allege the material on November 10, 2018, was stolen, or that Plaintiff was attempting to exchange it for "cash."  See UF 19.

[5]  Where the Court refers to Defendant in this manner, the Court means to refer to staff and employees of Defendant as well.

2.      The Court's Findings Regarding Defendant's Undisputed Facts

The Court notes that Defendant's description of the meet and confer efforts to arrive at some agreement on a statement of undisputed facts leads the Court to conclude Plaintiff did not sufficiently make good faith attempts to arrive at a joint statement.  (See ECF No. 57 at 3 ("Plaintiff did not respond further and Defendant was left with no option but to move forward with filing its own motion.  Defendant believes in good faith it has exhausted all reasonable efforts to meet and confer with Plaintiff in pro se and that any further efforts would be futile.").)  Given Plaintiff's lack of specifically addressing the majority of the statement of undisputed facts, the Court is able to largely accept Defendant's proffer as undisputed, except for where specific disagreements are clearly presented by Plaintiff, and were clearly targeted enough at least enough for Defendant to address in the reply.  See L.R. 260(b) ("Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.  The opposing party may also file a concise 'Statement of Disputed Facts,' and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication.  The opposing party shall be responsible for the filing of all evidentiary documents cited in the opposing papers.").  Under Rule 56, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or (4) issue any other appropriate order."  Fed. R. Civ. P. 56(e).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."  Taylor v. List, 880 F.2d 1040, 1045–46 (9th Cir. 1989).  "Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56,

designate specific facts that show there is a genuine issue for trial." <u>United States v. Young</u>, No. CV-07-0367-PHX-EHC, 2008 WL 11338794, at *2 (D. Ariz. Nov. 4, 2008) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)). "As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact[,] [and] [w]e rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.' " <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting <u>Richards v. Combined Ins. Co.</u>, 55 F.3d 247, 251 (7th Cir.1995)); <u>United States v. Young</u>, No. CV-07-0367-PHX-EHC, 2008 WL 11338794, at *2 (D. Ariz. Nov. 4, 2008) ("Plaintiff's failure to comply with the Local Rules have placed an undue burden on the Court and have made it difficult to determine whether there are any genuine issues of material fact . . . [t]he Court may deny Plaintiff's Motion for failure to submit a separate statement of facts.").

　　　　Despite the Plaintiff's *pro se* status, and the fact the Court may liberally construe filings, such as allegations in a complaint for purposes of screening, particularly when a *pro se* party is incarcerated, Plaintiff still owes a duty and obligation to the Court and to the other party to comply with the law and rules applicable to federal litigation, particularly here where the Plaintiff is not incarcerated.  <u>See</u> <u>Jacobsen v. Filler</u>, 790 F.2d 1362, 1364-66 (9th Cir. 1986) (observing "that *pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record," and holding "the district court did not have to inform Jacobsen of the need to file affidavits or other responsive matter before granting summary judgment against him."); <u>Dawnia Simmons v. Marriot Court Yard</u>, No. 19-CV-04431-PJH, 2021 WL 5834225, at *4 (N.D. Cal. Dec. 9, 2021) (rejecting unauthenticated evidence by *pro se* plaintiff and finding *pro se* party should be treated no differently by court under Ninth Circuit precedent in adjudication of motion for summary judgment) (citing <u>Jacobsen</u>, 790 F.2d at 1364); <u>Blalock v. Kelso</u>, No. 217CV1813TLNACP, 2021 WL 4305833, at *2 (E.D. Cal. Sept. 22, 2021) (declining to subject incarcerated *pro se* party to strict application of summary judgment rules, and recognizing distinctions between incarcerated and non-incarcerated *pro se* parties), <u>report and recommendation adopted,</u> No. 2:17-CV-01813-TLN-AC, 2021 WL 5417079 (E.D. Cal. Nov. 19, 2021).

Aside from the notations herein, Plaintiff failed to raise any relevant specific dispute as to Defendant's proffered facts, and failed to identify with reasonable particularity any evidence that precludes summary judgment.  "In order to defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations, or argumentative assertions that material facts are in dispute."   Sanai v. Sanai, No. C02-2165Z, 2005 WL 1172437, at *6 (W.D. Wash. May 18, 2005) (citing Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir.1994)); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001) ("*Forsberg* is both binding on us and consistent with the majority view that the district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein."); Sanai v. Sanai, No. C02-2165Z, 2005 WL 1172437, at *6 (W.D. Wash. May 18, 2005) ("However, if no factual showing is made in opposition to a motion for summary judgment, the District Court is not required to search the record *sua sponte* for some genuine issue of material fact.") (citing Carmen, 237 F.3d at 1029); Arvakhi v. Castro, No. 214CV02816CASEX, 2015 WL 6039119, at *4 n.6 (C.D. Cal. Oct. 15, 2015) ("Furthermore, to the extent plaintiff provides evidentiary support for her statements, it is either unclear to which evidence plaintiff is referring or whether that evidence is admissible or competent . . . the numerous documents plaintiff has attached, ranging from handwritten notes regarding the activities of her coworkers to self-taken photographs purportedly documenting the deterioration of plaintiff's health, appear to be either incomplete, lacking in foundation, or irrelevant . . . while the Court recognizes that plaintiff generally takes issue with defendants' statement of undisputed facts, to the extent an evidentiary conflict is not readily apparent, the Court accepts as undisputed defendants' supporting evidence."), aff'd sub nom. Arvakhi v. Clemmensen, 678 F. App'x 546 (9th Cir. 2017).  In the summary judgment context, this was Plaintiff's time to show to the Court why summary adjudication should not be granted.  Plaintiff was required to comply with the above legal requirements when presenting his opposition, not at a future date, such as where Plaintiff suggests more evidence will come out at trial.

Despite the failure to adhere to this Court's rules for addressing a joint statement of undisputed facts, "a case should, whenever possible, be decided on the merits." Falk v. Allen,

739 F.2d 461, 463 (9th Cir. 1984).  The Court has considered the merits of the Plaintiff's arguments and evidence, and finds no reasonable argument presented that demonstrates summary judgment in favor of Defendant is inappropriate in this matter.  "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact."  Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir.2000).  Defendant has done so.  Plaintiff has not established a genuine issue of material fact.  Carmen, 237 F.3d at 1030–31 ("Whether the evidence is attached or not, Rule 56(e) requires that the adverse party's 'response,' not just the adverse party's various other papers, 'set forth specific facts' establishing a genuine issue.").

Except for the limited relevant and specific challenges concerning the manner of reporting to the police on November 10, 2018, noted below, the Court finds each of Defendant's proffered facts to be essentially unrefuted by Plaintiffs' filings, and accepts each of Defendant's facts as undisputed except for the specific notations below.  Further, where specifically challenged, even if essentially accepting Plaintiff's dispute in full, the Court's analysis resulting in the granting of summary judgment in favor of Defendant would remain unchanged as the remaining undisputed facts still support the Court's granting of Defendant's motion for summary judgment based on the admissible evidence as presented and the legal standards.

**Defendant's Undisputed Fact ("UF") 1.**  On November 3, 2018, a theft occurred at the Lowe's retail store in Sonora, California.  (Decl. Sarah Budrow Supp. Mot. Summ. J. ("Budrow Decl.") ¶¶ 4, 8, App. Exs. Supp. Mot. Summ. J. ("App."), Ex. A.)

Discussion: Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 1 may be accepted as undisputed, based on the Court's review of the cited evidence.

**UF 2.**  Lowe's Loss Prevention Manager Sarah Budrow reported the theft to the Sonora Police Department on or about November 4, 2018.  (Budrow Decl. ¶¶ 5, 6.)

Discussion: Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 2 may be accepted as undisputed, based on the Court's review of the cited evidence.

**UF 3.**  Budrow reported only that three unknown men had stolen merchandise and advised the police that the store had video evidence.  (Budrow Decl. ¶¶ 5, 6.)

1    <u>Discussion:</u>  Plaintiff has not specifically disputed this fact as presented, and the Court

2    finds UF 3 may be accepted as undisputed, based on the Court's review of the cited evidence.

3        **UF 4.**  At the time she reported the theft to the Sonora Police Department, Budrow did

4    not know the names or identities of any of the three men involved in the theft, all she knew were

5    their physical descriptions.  (Budrow Decl. ¶¶ 5-7.)

6        <u>Discussion:</u> Plaintiff has not specifically disputed this fact as presented, and the Court

7    finds UF 4 may be accepted as undisputed, based on the Court's review of the cited evidence.

8        **UF 5.**  Budrow's sole intent in reporting the crime and gathering video evidence to

9    provide to law enforcement was to perform her duties to her employer and to assist the police in

10   investigating and prosecuting retail crime against her employer.  (Budrow Decl. ¶ 7.)

11       <u>Discussion:</u> Plaintiff has not specifically or meaningfully disputed this fact as presented,

12   and the Court finds UF 5 may be accepted as undisputed, based on the Court's review of the

13   cited evidence.[6]

14

---

15   [6] Even if the Court were to not accept the fact as establishing a "sole" intent given Plaintiff's general disputes, the Court does not find the establishment of sole intent necessary to the determination herein given the legal standards

16   applied below.  The Court finds it useful to now discuss the Plaintiff's overall challenge to Budrow's declarations, as Plaintiff argues contradictions show a malicious state of mind or other issues concerning the evidence and events.

17   Specifically, in Budrow's original declaration in support of Lowe's 12(b)(6) motion in the related case, she recalled that Officer Mallon was reviewing videos with her when Redick first walked into the store.  (1:21-cv-00979-NONE-

18   SAB, ECF No. 8-2, ¶¶ 9, 10.)  Budrow declared that on November 10, 2018, "an officer with the Sonora Police Department came to the store for the purpose of reviewing the videos with me.  I believe this may have been Officer

19   Mallon, but because I subsequently spoke with other officers, I cannot state that with certainty . . . this officer and I were reviewing the saved surveillance videos from November 3, 2018, other screens continued to display live, real-

20   time images . . . we observed two individuals walk into the store on the live screens . . . these individuals appeared to both the officer and I to very closely resemble two of the three individuals depicted on the November 3, 2018,

21   videos we were then reviewing."  (Id at ¶¶ 9-10.)  In her declaration submitted in support of the instant motion for summary judgment, Budrow now declares that:

22

23          I specifically recall that I was in the Loss Prevention Office at the Sonora Lowe's store in the
             afternoon of November 10, 2018, reviewing video from the November 3, 2018, theft (again, in

24          preparation for turning it over to the police).  I specifically recall that as I was reviewing the
             November 3, 2018, video on one monitor, I looked at a monitor displaying the "live" video feed

25          from the store.  I specifically recall observing on the "live" video an individual in the store on
             November 10, 2018, who resembled one of the suspects from November 3, 2018, and was in fact
             wearing identical clothing, including a distinctive black long sleeve shirt with the words "KINGS"

26          on the front.  I specifically remember being so surprised to see what appeared to be the same
             individual on both monitors that I briefly thought I might have accidentally put the saved video up

27          on the "live" video monitor.

28   (Budrow Decl. ¶ 12.)  Budrow states that as for the previous declaration:

1    **UF 6.**  Video evidence of the November 3, 2018 theft, shows one of the suspects entering

2    the Sonora Lowe's store at approximately 4:08 p.m.  (Budrow Decl. ¶¶ 21, 22; App., Exs. B, C.)

3    Discussion:  Plaintiff has not specifically disputed this fact as presented, and the Court

4    finds UF 6 may be accepted as undisputed, based on the Court's review of the cited evidence.

5    **UF 7.**  The individual appears from the November 3, 2018, video to be a white male with

6    short-cropped hair.  (Budrow Decl. ¶¶ 21, 22; App., Exs. B, C.)

7    Discussion:  Plaintiff has not specifically disputed this fact as presented, and the Court

8    finds UF 7 may be accepted as undisputed, based on the Court's review of the cited evidence.

9    **UF 8.**  The individual is wearing a black, long-sleeve shirt with the word "KINGS" on

---

> I previously provided a declaration in this case stating that Sonora Police Officer Scott Mallon was in my office reviewing the video with me when we observed Plaintiff Redick and his companion enter the store. That declaration was true and correct to the best of my recollection at the time I provided it, and is still my recollection today. However, having reviewed the video from the Lowe's parking lot and main vestibule on November 10, 2018 (**Exhibits X and X**), and the Police Report, it appears that Plaintiff Redick entered the store at approximately 3:30 p.m., Officer Mallon did not arrive at the store until approximately 3:44 p.m., and he stopped Plaintiff at approximately 3:50 p.m. Based on my review of those videos, I believe now that the circumstances I recall of reviewing video with Officer Mallon in my office must have occurred after he questioned Plaintiff and not before. Before Officer Mallon left the Lowe's store on November 10, 2018, he came to my office and I provided him with copies of the video evidence [including those attached to the Appendix as **Exhibits B, D, F, G, H,** and **I**], a still image taken from one of the videos [Appendix, **Exhibit C**] and my ORC Case Synopsis [Appendix, **Exhibit A**].

(Budrow Decl. ¶ 13.)  In reply, Defendant argues Plaintiff fails to show how either of her declarations contradict each other, let alone on a fact material to this litigation.  Defendant suggests the declarations do not show a contradiction, but rather a correction based on review of additional evidence.

The Court notes that Plaintiff is not incorrect to focus on the differing declarations.  Indeed, the initial description of events would likely be viewed as more reliable of an identification and less of a direct connection between Budrow the police, and Plaintiff, than the latter description.  However, the Court finds the corrected declaration to be reliable based on the totality of the description and totality of other evidence.  More importantly, the Court agrees with the Defendant that the difference is not enough to suggest that when Budrow called the police, she had the specific intent that an innocent man be arrested and prosecuted, and thus, for the reasons explained herein, the undisputed material facts show the Plaintiff cannot establish the elements of his Bane Act claim.

Finally, as for Plaintiff's allegations concerning Budrow's presence near the doorway, Budrow declares that:

> From the doorway of the store, I observed Officer Mallon stop Plaintiff Redick outside the store, speak with him in the parking lot, and then allow Mr. Redick to proceed on his way. I did not approach Redick or Officer Mallon and did not speak to Plaintiff at all during his interaction with Officer Mallon. At no time did I observe any other Lowe's employee approach Mr. Redick and Officer Mallon or speak to them. As the parking lot video attached as **Exhibit H** to the Appendix shows, no Lowe's employee was anywhere near where Plaintiff and Officer Mallon were talking at Plaintiff's truck.

(Budrow Decl. ¶ 14.)  The Court finds this consistent with the totality of the evidence reviewed.

the chest in white lettering, with white lettering on the sleeves.  (Budrow Decl. ¶¶ 21, 22; App., Exs. B, C.)

Discussion: Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 8 may be accepted as undisputed, based on the Court's review of the cited evidence. The Court does not find Plaintiff's issue with the reference to a "Teams" shirt in the police report to be relevant to the issues determinative to the motion for summary judgment.

**UF 9.**  This individual was wearing dark-colored pants and dark-colored athletic shoes with white soles.  (Budrow Decl. ¶¶ 21, 22; App., Exs. B, C.)

Discussion:  Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 9 may be accepted as undisputed, based on the Court's review of the cited evidence.

**UF 10.**  On another video from the November 3, 2018, theft, the individual with the "KINGS" shirt is seen pushing merchandise which had not been paid for out of the store on a cart at approximately 4:29 p.m.  (Budrow Decl. ¶ 8, 23; App., Exs. A, D.)

Discussion: Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 10 may be accepted as undisputed, based on the Court's review of the cited evidence. The Court does not find Plaintiff's issue with the reference to a "Teams" shirt in the police report to be relevant to the issues determinative to the motion for summary judgment.

**UF 11.**  On November 10, 2018, at approximately 3:30 p.m., Redick and his companion David Ashley entered the Sonora Lowe's store.  (Dep. Stanley Redick ("Redick Dep."), 42:21-43:7, 67:17-68:10, 72:7-73:2, 73:19:25; App., Ex. E; Budrow Decl. ¶ 24; App., Ex. F.)[7]

Discussion: Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 11 may be accepted as undisputed, based on the Court's review of the cited evidence.

**UF 12.**  Redick was wearing a black, long-sleeve shirt that said "KINGS" on the chest in white lettering.  (Redick Dep., 68:19-21, 72:7-73:2, 73:19-25; App., Ex. E; Budrow Decl. ¶¶ 24, 25; App., Exs. F, G (identical to Redick Dep. Exs. 3, 6, Backlar Decl., ¶¶ 4, 5); Backlar Decl., ¶ 6; App., Ex. H.)

---

[7]  Defendant notes that Exhibit F is identical to Exhibit 3 to the Redick Deposition.  (See Decl. Roger W. Backlar ("Backlar Decl.") ¶ 4.)

1     <u>Discussion:</u> Plaintiff has not specifically disputed this fact as presented, and the Court

2     finds UF 12 may be accepted as undisputed, based on the Court's review of the cited evidence.

3     The Court does not find Plaintiff's issue with the reference to a "Teams" shirt in the police report

4     to be relevant to the issues determinative to the motion for summary judgment.

5         **UF 13.**  Redick's "KINGS" shirt had white lettering on both sleeves.  (Redick Dep., 69:2-

6     6, 70:16-21; App., Ex. E; Budrow Decl. ¶¶ 24, 25; App., Exs. F, G ((identical to Redick Dep.

7     Exs. 3, 6, Backlar Decl., ¶¶ 4,5); Backlar Decl., ¶ 6; App., Ex. H (identical to Redick Dep., Exs.

8     1, 2.)

9         <u>Discussion:</u>  Plaintiff has not specifically disputed this fact, and the Court finds UF 13

10    may be accepted as undisputed, based on the Court's review of the cited evidence.  The Court

11    does not find Plaintiff's issue with the reference to a "Teams" shirt in the police report to be

12    relevant to the issues determinative to the motion for summary judgment.

13        **UF 14.**  On November 10, 2018, Redick was wearing dark-colored pants.  (Redick Dep.,

14    68:4-14, 70:16-71:5; App., Ex. E; Budrow Decl., ¶¶ 24, 25; App., Exs. F, G (identical to Redick

15    Dep. Exs. 3, 6, Backlar Decl., ¶¶ 4,5); Backlar Decl., ¶ 6; App., Ex. H (identical to Redick Dep.,

16    Exs. 1, 2.)

17        <u>Discussion:</u> Plaintiff has not specifically disputed this fact as presented, and the Court

18    finds UF 14 may be accepted as undisputed, based on the Court's review of the cited evidence.

19        **UF 15.**  On November 10, 2018, Redick was wearing dark-colored athletic shoes with

20    white soles.  (Redick Dep., 68:4-14, 70:16-71:5; App., Ex. E; Budrow Decl., ¶¶ 24, 25; App.,

21    Exs. F, G (identical to Redick Depo. Exs. 3, 6, Backlar Decl., ¶¶ 4, 5); Backlar Decl., ¶ 6; App.,

22    Ex. H (identical to Redick Depo., Exs. 1, 2).

23        <u>Discussion:</u> Plaintiff has not specifically disputed this fact as presented, and the Court

24    finds UF 15 may be accepted as undisputed, based on the Court's review of the cited evidence.

25        **UF 16.**  Plaintiff Redick identified himself as the white male in the "KINGS" shirt seen

26    on Lowe's video from November 10, 2018.  (Redick Dep., 67:17-68:14; App. Ex. E; Budrow

27    Decl., ¶¶ 24, 25; App., Exs. F, G (identical to Redick Dep. Exs. 3, 6, Backlar Decl., ¶¶ 4, 5);

28    Backlar Decl., ¶ 6; App., Ex. H (identical to Redick Depo., Exs. 1, 2.)

1        <u>Discussion</u>:  Plaintiff has not specifically disputed this fact as presented, and the Court

2 finds UF 16 may be accepted as undisputed, based on the Court's review of the cited evidence.

3        **UF 17.**  Apart from wearing a white baseball cap obscuring his face, the clothing worn by

4 Redick on November 10, 2018, is identical to that worn by the individual in the "KINGS" shirt

5 seen on the November 3, 2018, video.  (Budrow Decl.,¶ 23; App., Ex. C; Backlar Decl., ¶ 6;

6 App., Ex. J (identical to Redick Dep., Exs. 1, 2).

7        <u>Discussion</u>:  Plaintiff has not specifically disputed this fact, at least as presented, and the

8 Court finds UF 17 may be accepted as undisputed, based on the Court's review of the cited

9 evidence.  The Court does not find Plaintiff's issue with the reference to a "Teams" shirt in the

10 police report to be relevant.  The Court finds it may be more appropriate to view the clothing as

11 "appearing identical" rather than being identical.

12        **UF 18.**  On the video, Redick appears to be of a similar age, height, and build to the

13 individual seen in the November 3, 2018, video and identified as "WMA 1."  (Budrow Decl.,¶¶

14 8, 23; App., Exs. A, C; Backlar Decl., ¶ 6; App., Ex. J (identical to Redick Dep., Exs. 1, 2.)

15        <u>Discussion</u>:  Plaintiff has not specifically disputed this fact, and the Court finds UF 18

16 may be accepted as undisputed, based on the Court's review of the cited evidence.

17        **UF 19.**  All of Plaintiff's discussions with Lowe's employees on November 10, 2018,

18 related to Redick and Ashley's attempt to exchange the wood flooring.  (Redick Dep., 46:17-

19 48:24, 50:10-54:3, 113:14-114:7; App., Ex. E.)

20        <u>Discussion</u>:  Plaintiff has not specifically disputed this fact as presented, and the Court

21 finds UF 19 may be accepted as undisputed, based on the Court's review of the cited evidence,

22 including Plaintiff's deposition.

23        **UF 20.**  At no time did any of the Lowe's employees Plaintiff spoke with on November

24 10, 2018, accuse him of involvement in any crime on November 3, 2018, or reference the theft.

25 (Redick Depo, 46:17-48:24, 57:1-58:7; App., Ex. E.)

26        <u>Discussion</u>:  Plaintiff has not specifically disputed this fact as presented, and the Court

27 finds UF 20 may be accepted as undisputed, based on the Court's review of the cited evidence,

28 including Plaintiff's deposition.

**UF 21.**   None of the Lowe's employees Plaintiff interacted with on November 10, 2018, engaged in any physical violence against him or threatened him with physical violence.  (Redick Dep., 48:25-49:7; 49:5-7, 52:4-7, 52:20-24; 76:9-22; 79:19-25; App., Ex. E.)

Discussion:   Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 21 may be accepted as undisputed, based on the Court's review of the cited evidence. Plaintiff's averment to aggressive stance, the folding of arms, does not refute this fact as presented.

**UF 22.**   Budrow called the Sonora Police Department to report only that two individuals resembling the suspects from the November 3, 2018, theft had returned to the store.  (Budrow Decl. ¶ 11.)

Discussion:   Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 22 may be accepted as undisputed, based on the Court's review of the cited evidence. However, the Court accepts it as "to report that two individuals, rather than "only that two individuals" as the Court need not go as far as locking in a narrow form of intent or reasoning behind the phone call, based on only a declaration, in light of the fact that the Court may accept Plaintiff's opposition as reasonably disputing the reporting of the theft and manner of reporting by Budrow.  But any qualification is not determinative to the motion under the legal standards discussed below, even if the Court were to accept Plaintiff's proffer that Budrow specifically identified him as the individual that committed the theft on November 3, rather than just that he resembled the suspect.

**UF 23.**   Sonora Police Officer Scott Mallon stopped and questioned Plaintiff outside the store on November 10, 2018.  (Redick Dep., 31:21-32:2, 60:24-61:5; App., Ex. E. Budrow Decl., ¶¶ 14, 26, 27; App., Exs. H, I.)

Discussion:   Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 23 may be accepted as undisputed, based on the Court's review of the cited evidence.

**UF 24.**   Officer Mallon did not know Redick's identity when he stopped him outside the store on November 10, 2018, and asked for his identification.  (Deposition of Scott Mallon ("Mallon Depo."), 40:24-41:8; Backlar Decl., ¶ 7; App., Ex. K; Redick Dep., 61:25-62:14, 64:9-

16; App., Ex. E.)

Discussion:  Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 24 may be accepted as undisputed, based on the Court's review of the cited evidence.

**UF 25.**  While Redick was being questioned by Officer Mallon, neither Budrow nor any other Lowe's employee approached them, spoke to them, or made any threatening gestures. (Redick Dep., 63:8-64:3; App., Ex. E; Budrow Decl., ¶ 14, 26, 27; App., Exs. H, I.)

Discussion:  Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 25 may be accepted as undisputed, based on the Court's review of the cited evidence, including the Court's review of Budrow's declaration concerning her standing at the entrance area when Mallon approached.  (See Budrow Decl. ¶ 14.)

**UF 26.**  No Lowe's employees were any closer than 75 feet from where Redick was speaking with Officer Mallon.  (Redick Dep., 61:6-20, 62:19-63:3; App., Ex. E; Mallon Dep., 42:9-13; App., Ex. K.)

Discussion:  Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 26 may be accepted as undisputed, based on the Court's review of the cited evidence, as well as review of Budrow's declaration concerning her standing at the entrance area when Mallon first approached.  (See Budrow Decl. ¶ 14.)

**UF 27.**  After obtaining Redick's identification, Officer Mallon allowed Redick to leave and go on his way.  (Redick Dep., 65:1-10; App., Ex. E; Budrow Decl., ¶ 26; App., Ex. H.)

Discussion:  Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 27 may be accepted as undisputed, based on the Court's review of the cited evidence. The Court accepts "to leave and go on his way," to mean specifically was allowed to leave Lowe's on November 10, 2018, without being cited, charged, or arrested.

**UF 28.**  Budrow's sole intent in reporting to the police that individuals resembling the suspects had returned and in providing evidence to law enforcement was to perform her duties to her employer and assist the police in investigating and prosecuting retail crime against her employer.  (Budrow Decl. ¶ 19.)

Discussion:  Plaintiff has not specifically disputed this fact as presented, and the Court

finds UF 28 may be accepted as undisputed.  However, again, the Court need not go as far as locking in a narrow form of intent or reasoning behind the reporting, as a finding that this was the "sole" intent is not determinative to the motion under the legal standards discussed below.

**UF 29.**  At no time did Budrow ever form the intent or act with the intent that Plaintiff Stanley Redick be arrested or prosecuted.  Her sole intent was to provide evidence to law enforcement so that they could identify and prosecute those involved in the November 3, 2018, theft.  (Budrow Decl. ¶ 19.)

Discussion:  Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 29 may be accepted as undisputed.  However, again, the Court need not go as far as locking in a narrow form of intent or reasoning behind the reporting, as a finding that this was the "sole" intent is not determinative to the motion under the legal standards discussed below.

**UF 30.**  Budrow only reported the theft, reported that individuals resembling the suspects had returned to the store on November 10, 2018, and provided police with the video evidence. (Budrow Decl. ¶ 20.)

Discussion:  Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 30 may be accepted as undisputed, based on the declaration as well as the totality of the evidence

**UF 31.**  Officer Bowly recommended that the District Attorney file criminal charges against Plaintiff Redick and the other suspects.  (Bowly Dep., 14:20-24; App., Ex. L.)

Discussion:  Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 31 may be accepted as undisputed, based on the cited evidence.

**UF 32.**  Officer Bowly's recommendation was based on the fact that a crime had been committed and the fact that he *personally* identified the three involved parties.  (Bowly Dep., 14:25-15:5; App., Ex. L.)

Discussion:  Plaintiff has not specifically disputed this fact as presented, and the Court finds UF 32 may be accepted as undisputed, based on the cited evidence.

**UF 33.**  Officer Bowly's recommendation was based on the video evidence turned over by Sarah Budrow.  (Bowly Dep., 15:6-10; App., Ex. L.)

1    <u>Discussion:</u>  Plaintiff has not specifically disputed this fact as presented, and the Court

2    finds UF 33 may be accepted as undisputed, based on the cited evidence.

3         **UF 34.**  Officer Bowly *independently* reviewed the video evidence and concluded that

4    there was probable cause to file criminal charges against Redick.  (Bowly Dep., 15:11-18; App.,

5    Ex. L.)

6         <u>Discussion:</u>  Plaintiff has not specifically disputed this fact as presented, and the Court

7    finds UF 34 may be accepted as undisputed, based on the cited evidence.

8         **UF 35.**  Neither Budrow nor any other employee of Lowe's was present when Plaintiff

9    was arrested.  (Budrow Decl. ¶ 18.)

10        <u>Discussion:</u>  Plaintiff has not specifically disputed this fact as presented, and the Court

11   finds UF 35 may be accepted as undisputed, based on the cited evidence.

12        **UF 36.**  During the course of the police investigation, the decision to issue an arrest

13   warrant, and Redick's arrest and prosecution, Lowe's only involvement was to report the crime

14   and provide evidence when requested by the police or District Attorney.  (Budrow Decl. ¶¶ 16,

15   17.)

16        <u>Discussion:</u>  Plaintiff has not specifically disputed this fact as presented, and the Court

17   finds UF 36 may be accepted as undisputed, based on the cited evidence.

18        3.    <u>The Court Shall Grant Summary Judgment in Favor of Defendant</u>

19        California's Bane Act provides a cause of action against any person or persons who,

20   "whether or not acting under color of law, interferes by threat, intimidation, or coercion, or

21   attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by an

22   individual or individuals of rights secured by the Constitution or laws of the United States, or

23   laws and rights secured by the Constitution or laws of California."  Cal. Civ. Code § 52.1(b)-(c).

24   The Bane Act requires "an attempted or completed act of interference with a legal right,

25   accompanied by a form of coercion."  <u>Jones v. Kmart Corp.</u>, 17 Cal. 4th 329, 334 (1998).  "The

26   word 'interferes' as used in the Bane Act means 'violates.' "  <u>Austin B. v. Escondido Union Sch.</u>

27   <u>Dist.</u>, 149 Cal. App. 4th 860, 883, 57 Cal. Rptr. 3d 454, 472 (2007) (quoting <u>Jones</u>, 17 Cal. 4th at

28   338).  "The essence of a Bane Act claim is that the defendant, by the specified improper means

1   (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing

2   something he or she had the right to do under the law or to force the plaintiff to do something he

3   or she had the right to do under the law or to force the plaintiff to do something that he or she

4   was not required to do under the law." Lawman v. City & Cnty. of San Francisco, 159 F. Supp.

5   3d 1130, 1151 (N.D. Cal. 2016) (quoting Austin B., 149 Cal.App.4th at 883).

6        The California Model Civil Jury Instructions provide that Plaintiff must prove: (1) that by

7   threats, intimidation or coercion, Defendant caused Plaintiff to reasonably believe that if he

8   exercised his right, Defendant would commit violence against him or his property and that

9   Defendant had the apparent ability to carry out the threats, or that Defendant acted violently

10  against Plaintiff and Plaintiff's property to prevent him from exercising his right to retaliate

11  against Plaintiff for having exercised his right; (2) Defendant intended to deprive Plaintiff of his

12  enjoyment of the interests protected by the right; (3) Plaintiff was harmed; and (4) Defendant's

13  conduct was a substantial factor in causing Plaintiff's harm.  Judicial Council of California Civil

14  Jury Instruction 3066.  In the context of alleged unlawful arrest, a Bane Act claim "requires a

15  'specific intent to violate the arrestee's right to freedom from unreasonable seizure.' " Reese v.

16  County of Sacramento, 888 F.3d 1010, 1043 (9th Cir. 2018) (quoting Cornell v. City & Cnty. of

17  San Francisco, 17 Cal. App. 5th 766, 800, 225 Cal. Rptr. 3d 356, 384 (2017)).

18        a.      **Summary Judgment is Appropriate Under California Civil Code § 47**

19        Defendant submits it is undisputed the theft that occurred at Sonora Lowe's on November

20  3, 2018; that Lowe's reported it to the police; that Plaintiff admits he has no evidence that the

21  theft did not occur as reported; that the theft and the involved suspects were captured on video;

22  and that five days before Plaintiff came to Lowe's on November 10, 2018, Budrow prepared a

23  report that merely described the theft and provided a physical description of the unknown white

24  male suspects taken from the videos.  (Mem. 14.)  Defendant emphasizes it is undisputed that on

25  November 10, 2018, a man entered Lowe's matching Plaintiff's description and wearing

26  identical clothing, including the very distinctive "KINGS" shirt, and that Plaintiff admits he was

27  that man on November 10, 2018.  Defendant contends Budrow did nothing more than alert the

28  Sonora Police Department that men resembling the suspects from the previously reported theft

had returned; then, Plaintiff was identified by the police outside the store and allowed to leave. Plaintiff was then arrested a month later, after Officer Bowly independently reviewed the video evidence from November 3 and November 10, 2018, and made an independent determination that probable cause existed.  (Mem. 14.)

Defendant argues Plaintiff's arrest resulted from a truthful report to the police and such conduct was absolutely privileged under California Civil Code § 47.  Defendant argues that not only does merely communicative conduct fall outside the scope of the Bane Act, such conduct was, at the time, absolutely privileged under California Civil Code § 47 ("Section 47").  (Mem. 14-15.)

The Court agrees.  The Bane Act provides that: "[s]peech alone is not sufficient to support an action brought pursuant to subdivision (b) or (c), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat."  Cal. Civ. Code § 52.1(k).[8]  Turning to Section 47, the provision provides that:

> A privileged publication or broadcast is one made:
>
> (a) In the proper discharge of an official duty.
>
> (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows: . . .

Cal. Civ. Code § 47(b).  It is noteworthy that the provision was amended to include language relevant to the allegations in this case:

> . . . (5) This subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is

---

[8]  Defendant incorrectly cites to subsection (j), rather than (k).  (Mem. 14 n. 2.)

1   engaged in an activity requiring law enforcement intervention,
    knowing that the report is false, or with reckless disregard for the
2   truth or falsity of the report.

3   Cal. Civ. Code § 47(b)(5).   Thus, the California Legislature amended Section 47, effective

4   January 1, 2021, making the privilege for communications to law enforcement only qualified,

5   and no longer applicable to knowingly or recklessly false reports to the police.   Defendant

6   highlights that citing to this Court's decision in this case, in King, the Chief District Judge held

7   Section 47's amended provision could not be applied retroactively, and the immunity defense

8   under Hagberg must be analyzed under the absolute privilege rule.   King v. City of Sacramento,

9   No. 2:20-CV-01326-KJM-DB, 2022 WL 37048, at *3 (E.D. Cal. Jan. 4, 2022) (citing Hagberg v.

10  California Federal Bank, 32 Cal. 4th 350, 361 (Cal. 2004); Redick v. Lowe's Home Centers,

11  LLC, No. 1:21-00358, 2021 WL 3418728, at *4 (E.D. Cal. Aug. 5, 2021)).   The King court held

12  as follows:

13          Section 47 provides that any "official proceeding authorized by
            law," is privileged. Cal. Civ. Proc. Code § 47(b). The purpose
14          of section 47 is to provide citizens with "free and open access to
            governmental agencies for the reporting of suspected illegal
15          activity." *Williams v. Taylor*, 129 Cal. App. 3d 745, 754 (Cal. Ct.
            App. 1982). Section 47 applies to all tort claims except claims of
16          malicious prosecution. *Hagberg v. California Federal Bank*, 32
            Cal. 4th 350, 361 (Cal. 2004). Prior to 2021, the California
17          Supreme Court held the privilege was absolute, so it applied
            "without respect to the good faith or malice of the person who
18          made the statement." *Hagberg*, 32 Cal. 4th at 361. The California
            Legislature amended the law, effective January 1, 2021, to make
19          the privilege a qualified one, Cal. Civ. Proc. Code §
            47(b)(5); *see Tuomela v. Waldorf-Astoria Grand Wailea Hotel*,
20          No. 20-00117, 2021 WL 233695, at *2 n.5 (D. Haw. Jan. 22,
            2021). But the amendment does not apply retroactively. *See Redick
21          v. Lowe's Home Centers, LLC*, No. 1:21-00358, 2021 WL
            3418728, at *4 (E.D. Cal. Aug. 5, 2021). Given that Klockenbrink
22          communicated with the police in 2019, the court analyzes the
            immunity defense under *Hagberg*'s absolute privilege rule.
23

24  King, 2022 WL 37048, at *3 (footnote omitted).   Thus, the Court turns to the standards in effect

25  in November of 2018, as expressed in Hagberg.

26          The Hagberg decision affirmed that the Section 47 is an absolute privilege that bars all

27  tort causes of action except a claim for malicious prosecution.   32 Cal. 4th at 374 (Section 47

28  "applies not only to defamation, as earlier had been understood, but to all tort actions that seek to

1  impose liability based upon a covered communication, with the exception of malicious

2  prosecution.").[9]   The Supreme Court of California explained the policy reasons behind the

3  absolute privilege:

> We have explained that the absolute privilege established
> by section 47(b) serves the important public policy of assuring free
> access to the courts and other official proceedings. It is intended to
> " 'assure utmost freedom of communication between citizens
> and *public authorities whose responsibility is to investigate and
> remedy wrongdoing.*' " (*Silberg, supra,* 50 Cal.3d at p. 213, 266
> Cal.Rptr. 638, 786 P.2d 365, italics added.) We have explained that
> both the effective administration of justice and the citizen's right of
> access to the government for redress of grievances would be
> threatened by permitting tort liability for communications
> connected with judicial or other official proceedings. Hence,
> without respect to the good faith or malice of the person who made
> the statement, or whether the statement ostensibly was made in the
> interest of justice, "courts have applied the privilege to eliminate
> the threat of liability for communications made during all kinds of
> truth-seeking proceedings: judicial, quasi-judicial, legislative and
> other official proceedings." (*Ibid.*)

13  32 Cal. 4th at 360–61.  The court noted numerous cases found the privilege applied to complaints

14  to governmental agencies requesting that the agency investigate or remedy wrongdoing.  Id. at

15  363 (collecting cases).  The court noted that "[b]y the same token, the overwhelming majority of

16  cases conclude that when a citizen contacts law enforcement personnel to report suspected

17  criminal activity and to instigate law enforcement personnel to respond, the communication also

18  enjoys an unqualified privilege under section 47(b)."  Id. at 364.  The court noted "[t]hese cases

19  explain that a statement urging law enforcement personnel to investigate another person's

20  suspected violation of criminal law, to apprehend a suspected lawbreaker, or to report a crime to

21  prosecutorial authorities is shielded from tort liability to the same extent as a similar statement to

22  administrative enforcement agencies."  Id.  The California Supreme Court affirmed the privilege

23  to be absolute as applied to such communications.

24      As relevant here, the California Supreme Court explained the differences between pure

25  communication, versus earlier cases that explored circumstances where by conduct, one could

26  aid an unlawful arrest (and the tort of false imprisonment):

27  _____

[9]  The Court again notes the Court's screening order allowed Plaintiff leave to amend an initially pled malicious
prosecution claim, however, Plaintiff did not, and instead chose to proceed only on the Bane Act claim.  (ECF No.
19 at 9-10.)

28

These cases, however, did not mention, much less analyze, the privilege established by section 47(b). They explored the limits of the common law tort of false imprisonment and the potential for liability as an aider and abettor of an unlawful arrest by police officers. The cases did not consider the issue in the context of a proceeding in which bad faith actually was alleged. The cases also did not distinguish between malicious *conduct* of a citizen that aided or promoted a peace officer's unlawful arrest, which might support liability, and pure *communication,* which would be protected by the statutory privilege. (See *Kimmel v. Goland, supra,* 51 Cal.3d at p. 211, 271 Cal.Rptr. 191, 793 P.2d 524 [distinguishing injury from "noncommunicative conduct" from injury arising from "communicative acts"].) They did not consider whether a cause of action for false imprisonment based upon pure communication should be permitted even though a claim for *defamation* or any other tort save malicious prosecution would be prohibited by section 47(b) . . .

. . . Moreover, the cases predated the expansion of the privilege that began with *Albertson v. Raboff, supra,* 46 Cal.2d 375, 295 P.2d 405, and that led to the broad interpretation established in *Silberg, supra,* 50 Cal.3d 205, 266 Cal.Rptr. 638, 786 P.2d 365, and other cases. The early cases upon which plaintiff relies were decided before this court explored the broad reach of the privilege established by section 47(b) and explained that it applies not only to defamation, as earlier had been understood, but to all tort actions that seek to impose liability based upon a covered communication, with the exception of malicious prosecution. As we have cautioned, the privilege cannot be defeated by providing a new label for the alleged wrong.

Hagberg, 32 Cal. 4th at 374.  Thus, the privilege applies to all tort claims with the exception of malicious prosecution, and it serves the public purpose of assuring free and open communications between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing.  Id. at 360 ("Hence, without respect to the good faith or malice of the person who made the statement, or whether the statement ostensibly was made in the interest of justice, courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings.") (citation and quotation mark omitted).

Turning to specific cases applying the privilege, the Court finds the cases proffered by Defendant to be persuasive and supportive.  First, in Hunsucker, plaintiffs' family were staying at a hotel, and following an interaction and allegations of items missing from the room, a hotel maid reported to her manager that she had seen a woman in the plaintiffs' hotel room brandishing a gun.  Hunsucker v. Sunnyvale Hilton Inn, 23 Cal. App. 4th 1498, 1500, 28 Cal.

27

Rptr. 2d 722 (1994).  The manager called the police and identified the hotel guests by name to the police.  Id.  A routine warrants check revealed that an individual with the same name as the male plaintiff had an outstanding felony warrant for assault.  Police ordered the male plaintiff out of his room and handcuffed him, and the other plaintiffs were questioned.  A police search of the room turned up a toy gun and police determined that the male guest was not the individual named in the felony warrant.  Id. at 1500-1501.

Plaintiffs sued the hotel and the City of Sunnyvale for false imprisonment, assault and battery, and civil rights violations.  Id. at 1501.  The city was voluntarily dismissed.  The Hunsucker court granted summary judgment in favor of the hotel, finding that the entire action was barred by the absolute privilege of Section 47(b), and the decision was affirmed.  Id. at 1502, 1504- 1505 ("the California Supreme Court made it clear that the privilege of section 47 applies to bar *all* tort actions, except for malicious prosecution, that are based upon a communication of the proper type . . . [h]ere, indisputably, all of the actions about which plaintiffs complain arose as a result of the communication from Hilton's manager to the Sunnyvale police.").

Flores is instructive.  Flores v. J.C. Penney, No. 04CV2337-IEG (NLS), 2006 WL 8442634 (S.D. Cal. Mar. 16, 2006), aff'd sub nom. Flores v. JC Penney Corp., 256 F. App'x 979 (9th Cir. 2007).  There, the plaintiffs, all family members, went to the J.C. Penney store to return some articles of clothing.  Id. at * 1. Earlier that day, a group of shoplifters had stolen items from the store.  Id.  This theft was reported to the police and while the police officer was in the store manager's office discussing the prior incident, a store employee saw the plaintiffs and called the office to report that the thieves had returned to the department.  Id.  The police officer specifically asked whether the plaintiffs should be arrested, and the store manager said no.  Id. The police officer detained the individuals, asked for their identification, questioned them, and ran a background check.  Id. at *2.  The family was detained until Border Patrol arrived and took two members of the family into custody; the rest were released.  Id.  Plaintiffs sued the store and the store manager for causes of action including false imprisonment and violation of the Bane Act.  Id.

Of note, the plaintiffs "appear[ed] to concede that the litigation privilege protects much of J.C. Penney's actions, but argue[d] [in part] that they can base their claims on . . . allegations that J.C. Penney employees participated in the detention of plaintiffs by being present as Shephard moved plaintiffs throughout the store." Flores, 2006 WL 8442634, at *8 (footnote omitted).  The court found that Section 47(b) provided absolute immunity from the Bane Act claim as well as the false imprisonment claims, noting the "California Supreme Court has found that plaintiffs may not bring a section 52.1 action against a store whose agents have erroneously identified a plaintiff as a potential lawbreaker for violation of Fourth Amendment rights [under Jones v. Kmart, and] . . . any potential Fourth Amendment claim would arise from the Penney defendants' conversations with the police, which are protected by section 47(b)." Id. at *10. Specifically, the court noted the following facts when discussing the Bane Act claim:

> Antonio Flores admits that Sanchez never spoke to him except when answering questions. (Defendants' Lodgment. "A" at 53.) In fact, Antonio Flores' testimony indicates a lack of any threatening action by the J.C. Penney employees. (Defendants' Lodgment. "A.") Therefore, the plaintiffs in this case could not have had a "reasonable belief" that the Penney defendants would exercise violence against them should plaintiffs seek to exercise their constitutional rights.

Id. The court granted summary judgment, noting that "[w]hen a complaint arises only from privileged communication, summary judgment for defendant is appropriate." Flores v. J.C. Penney, 2006 WL 8442634, at *8 (citing Hunsucker, 23 Cal. App. 4th 1498).

In Grant, the following transpired:

> Upon returning to his car that he parked in a Starbucks parking lot, Plaintiff heard a Starbucks employee shout, "you're breaking into my car!" Surprised, Plaintiff explained to the Starbucks employee that he owned the car and displayed his keys. Nonetheless, another Starbucks employee called the police. Seven officers arrived to Plaintiff cooly relaxing on the bumper of his car, keys in hand.
>
> Five officers drew their weapons. They commanded Plaintiff to put his hands in the air and get on his knees. An officer then handcuffed him. Four minutes later, the handcuffs were off and Plaintiff was free to go. Believing he was unjustly treated, Plaintiffs sued Starbucks and Hawthorne for what transpired.

Grant v. Starbucks Corp., No. CV21808927SJOKS, 2019 WL 8112465, at *1 (C.D. Cal. Sept. 24, 2019).  While no Bane Act claim was brought, the district court found Section 47(b) barred

1  plaintiff's claims for false imprisonment, deprivation of rights under Section 1983, negligence,

2  intentional infliction of emotional distress, negligent infliction of emotional distress, and

3  violation of the Unruh Civil Rights Act.  Grant v. Starbucks Corp., No. CV21808927SJOKS,

4  2019 WL 8112465, at *6 (C.D. Cal. Sept. 24, 2019) ("Similar to the previous causes of action

5  discussed previously, § 47(b) applies to all tort actions, including Unruh Civil Rights Act

6  claims.").  The court discussed the extent of the privilege as to calls to the police:

7
8
> In *Lautner v. Anoufrieva*, the plaintiff alleged that the defendants
> "filed or caused to be filed false police reports accusing [him] of
> committing criminal acts." *Lautner v. Anoufrieva*, 642 F. Supp. 2d
> 1060, 1989-90 (C.D. Cal. 2009). The court explained that the
> plaintiff's claims were "predicated on defendants' communications,
> albeit allegedly false in nature, with the police regarding plaintiff's
> purported criminal activities." *Id.* The court concluded that the
> plaintiff's claims "must be dismissed because, under California
> law, reports to police of suspected criminal activities—**even false
> reports made with malice**—are absolutely privileged and may not
> serve as predicate for tort claims, except the tort of malicious
> prosecution." *Id.* at 1090 (emphasis added). Other courts, including
> this Court, have similarly concluded that § 47(b) applies to bar
> civil actions grounded in calls to the police. *See Ibrahim v. Dep't of
> Homeland Security*, 538 F.3d 1250, 1258 (9th Cir. 2008) (holding
> that a defendant's telephone call to the San Francisco police was
> privileged under state law and could not form the basis for tort
> liability); *Herwick v. Budget Rent A Car Sys., Inc.*, 2010 WL
> 11549389, at *2-3 (C.D. Cal. June 28, 2010) (this Court's
> dismissal, based on § 47(b), of plaintiff's false imprisonment,
> defamation, and intentional infliction of emotional distress claims
> arising from defendant's false report of a stolen vehicle).
>
> Like the plaintiffs in *Lautner, Ibrahim*, and *Herwick*, Plaintiff's tort
> claims based on Meza's 911 call to the police must be dismissed
> because they are subject to the absolute privilege of §
> 47(b). *See Ibrahim*, 538 F.3d at 1258; *Lautner*, 642 F. Supp. 2d at
> 1989-90; *Herwick*, 2010 WL 11549389, at *2-3. This remains true
> even assuming, as Plaintiff repeatedly asserts in his opposition,
> Cruz was aware that Plaintiff claimed he owned the vehicle prior
> to the 911 call. (*See* Plaintiff's Opp. to Starbucks' Motion at 6-7.)
> Even if Cruz knowingly instituted a false police report, § 47(b)'s
> absolute privilege would still apply to Plaintiff's
> claims. *See Lautner*, 642 F. Supp. 2d at 1989-90 (explaining that §
> 47(b) applies to "reports to police of suspected criminal activities –
> **even false reports made with malice** ...") (emphasis added).

26  Grant, 2019 WL 8112465, at *5 (emphasis in original); see also King, 2022 WL 37048, at *4

27  ("In *Titus v. County of Los Angeles*, another district court addressed a scenario factually

28  analogous to this case in considering an absolute immunity defense where it was undisputed that

1  plaintiff was misidentified as the perpetrator of a crime he did not commit . . . Here,

2  Klockenbrink communicated with the police first on May 7, 2019 when he alerted them to the

3  burglary . . . and again two days later when he identified King from a photo lineup . . . [and] [h]is

4  communications, like those in *Titus*, are absolutely privileged because they spurred law

5  enforcement personnel to respond to the burglary, which directly aligns with Section 47's policy

6  goals.").

7          As noted above, <u>Flores</u> involved a Bane Act claim.  While <u>Hunsucker</u> and <u>Grant</u> did not,

8  <u>Grant</u> did involve an Unruh Act claim.  Defendant proffers in briefing that it has been unable to

9  find a single case holding that the absolute immunity provided by Section 47 does not apply to a

10  Bane Act claim.  Indeed, there appears to be a lack of clear authority discussing the interplay of

11  the Bane Act, Section 47 immunity, and the exception for malicious prosecution.  However, in

12  <u>Fenters</u>, Judge Oliver Wanger denied summary judgment given there was no clear application of

13  the privilege to a Bane Act claim that was based on a malicious prosecution claim:

14                  Plaintiff responds that, to the extent the Third Cause of Action
                    alleges an unconstitutional malicious prosecution claim
15                  under Section 52.1, it is not barred by the Section 47(b) privilege.
                    Plaintiff asserts that she "has found no case where a malicious
16                  prosecution claim and/or a section 52.1 claim based on malicious
                    prosecution was dismissed based on an application
17                  of section 47(b)."

18                  In *Hagberg,* the plaintiff filed a complaint alleging claims for false
                    arrest, false imprisonment, slander, invasion of privacy, intentional
19                  infliction of emotional distress, and race discrimination in violation
                    of the Unruh Civil Rights Act, Civil Code §§ 51 and 52.1. The
20                  Supreme Court refused to address the plaintiff's contention
                    that Section 47(b) should not be interpreted to bar liability where it
21                  is alleged that a business establishment's communication to the
                    police concerning suspected criminal activity was motivated by
22                  racial or ethnic prejudice and therefore constituted unlawful
                    discrimination by the business establishment in violation of the
23                  Unruh Civil Rights Act, because the plaintiff's evidence did not
                    suffice to raise a question of fact that defendants were motivated
24                  by racial or ethnic prejudice. 32 Cal.4th at 375–376, 7 Cal.Rptr.3d
                    803, 81 P.3d 244. No case since *Hagberg* discusses application
25                  of Section 47(b) to a claim for violation of Section 52.1.

26                  Summary judgment on this ground is DENIED.

27  <u>Fenters v. Yosemite Chevron</u>, 761 F. Supp. 2d 957, 999 (E.D. Cal. 2010).  Notably, in <u>Fenters</u>,

28  there was evidence of fabricating evidence in furtherance of prosecution, rather than only

                                              31

communicative conduct, in addition to evidence of retaliatory motive:

> The defendants' interference with these constitutional rights was accomplished by means of force, coercion, and intimidation, and/or the threat thereof. Plaintiff clarifies that the defendants' liability under this cause of action is not based on the privileged acts of reporting criminal activity and/or testifying in court, but, rather, fabricating evidence used to justify the filing and continuation of baseless criminal charges, as set forth hereinabove.
> . . .
> Aceves' deposition testimony and the record of his interview with Abbate and Hutton establishes that Abbate did not coerce Aceves to give a statement implicating Plaintiff in the alleged embezzlement. However, there is evidence from which it may be inferred that Abbate did not give Hutton complete financial and other information during the course of his investigation. If the trier of fact determines that Abbate was pursuing the criminal prosecution to threaten and intimidate Plaintiff to deter her from bringing claims related to her employment, the case authority cited above permits an inference of conduct prohibited by Section 52.1. Summary judgment on this ground is DENIED.

Fenters, 761 F. Supp. 2d at 998.

Another case from the same time period found the privilege did apply to a Bane Act claim.  See Martin v. Cnty. of San Diego, No. 03 CV1788 LEG (WMC), 2006 WL 8441692, at *7 (S.D. Cal. Mar. 30, 2006) ("Defendants argue that defendant Phillips' initial report to the San Diego County Sheriff's Department, the ensuing police report, and "statements made concerning the identification of Plaintiff and his address, which was then forwarded on to the Sheriff's department," are all privileged  . . . [b]ecause section 47(b) operates as a complete bar to claims arising from privileged publications, like those made by witnesses to police officers, defendants' motion for summary judgment as to plaintiff's claims for false arrest and imprisonment, battery, violation of Cal. Civ. Code section 52.1(b), and conspiracy is granted.").

Despite Fenters and its holding in relation to a Bane Act violation based on a malicious prosecution claim, in addition to Flores and Martin, the Court finds authority demonstrating the privilege is not waived for a Bane Act claim.  In O'Toole, in the context of another immunity provision concerning public employees, the court concluded the immunity provision applied, and the discussion is helpful in considering Section 47 as applied to the Bane Act:

> First, we reject plaintiffs' argument that section 820.6 is inapplicable to the Bane Act as a matter of law. Although there are

> no published decisions specifically applying the section 820.6 immunity to the Bane Act, under California law "[i]t is generally recognized that a statutory governmental immunity overrides a statute imposing liability." (*Gates v. Superior Court* (1995) 32 Cal.App.4th 481, 510, 38 Cal.Rptr.2d 489; see *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 986, 42 Cal.Rptr.2d 842, 897 P.2d 1320; *Gibson v. County of Riverside* (C.D.Cal.2002) 181 F.Supp.2d 1057, 1085–1086.) Thus, absent "a clear indication of legislative intent that statutory *immunity* is *withheld or withdrawn*," a specific statutory immunity applies to shield a public employee from liability imposed by a particular statute. (*Caldwell, supra,* 10 Cal.4th at p. 986, 42 Cal.Rptr.2d 842, 897 P.2d 1320; *Gates, supra,* 32 Cal.App.4th at p. 510, 38 Cal.Rptr.2d 489.) On our examination of Civil Code section 52.1, we have found no indication the Legislature intended to create an exception to the general rule. Civil Code section 52.1 contains no indicia reflecting an intent that public employees may be sued despite a statutory immunity that would otherwise apply.

O'Toole v. Superior Ct., 140 Cal. App. 4th 488, 504, 44 Cal. Rptr. 3d 531, 543 (2006).  The discussion in Renteria, reinforces the application of the immunity provision to the claim at hand:

> In contrast, as Defendants correctly contend, the Bane Act claim may not be based on the facts ostensibly giving rise to Plaintiffs' malicious prosecution claim, California Government Code section 821.6 immunizes public employees "for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Id. (emphasis added). The scope of this immunity extends to the investigation before prosecution and applies "even if the officers abused their authority." Gillan v. City of San Marino, 147 Cal. App. 4th 1033, 1048 (Ct. App. 2007). This statutory immunity is not waived by California Civil Code section 52.1. O'Toole v. Superior Court, 140 Cal. App. 4th 488, 504 (Ct. App. 2006). Consequently, Plaintiffs cannot assert a Bane Act claim premised upon malicious prosecution claim.

Renteria v. Cnty. of Los Angeles, No. CV1300834JVSVBKX, 2014 WL 12579807, at *5 (C.D. Cal. Oct. 2, 2014); see also Cox v. Griffin, 34 Cal. App. 5th 440, 442–43, 246 Cal. Rptr. 3d 185, 189 (2019) (affirming grant of court's judgment notwithstanding verdict following jury trial because under Hagberg "citizen reports of suspected criminal activity can only be the basis for tort liability on a malicious prosecution theory . . . [and] [w]hen a citizen contacts law enforcement to report a suspected crime, the [Section 47(b) privilege] bars causes of action for false imprisonment and intentional infliction of emotional distress, even if the police report was made maliciously.").

1    Here, the Court agrees with Defendant that Plaintiff's claim against Lowe's is premised

2    on an allegation that Lowe's contacted the police and falsely accused him of committing a crime,

3    however, Lowe's report of a November 3, 2018, theft, its November 10, 2018, report that

4    persons resembling the suspects had returned to the store, and its turning over video evidence to

5    the police, were merely communicative acts and were absolutely privileged.   Further, the

6    undisputed facts establish that the issuance of an arrest warrant and Plaintiff's subsequent arrest

7    and prosecution was the result of an independent investigation by the police and charging

8    decision by the District Attorney in which Lowe's played no part, at least no role that would

9    establish liability under the legal standards herein.

10   The Court therefore concludes that the Section 47 privilege, at least in its previous form

11   prior to amendment, provides absolute immunity for the type of communications made here.

12   Indeed, the Court agrees the undisputed material facts establish that Lowe's report to the police

13   was demonstrably true or at a minimum at made in good faith, and that even if not, Section 47's

14   absolute privilege in effect at the time would bar Plaintiff's Bane Act claim even if Lowe's

15   reports had been in bad faith.   Additionally, Plaintiff has not produced evidence of conduct by

16   Lowe's—outside the scope of Section 47's absolute privilege--that was violent, threatening, or

17   coercive in violation of his Fourth Amendment or any other constitutional right.

18   Accordingly, the Court finds it may appropriately grant Defendant's motion for summary

19   judgment because of all of the conduct by Lowe's on which Plaintiff bases his Bane Act cause of

20   action was absolutely privileged under California Civil Code Section 47(b).   Even if Section

21   47(b) did not apply to the Bane Act claim, the Court next finds summary judgment is appropriate

22   under the California Supreme Court decision in Jones v. Kmart.

23   **b.      Summary Judgment is Appropriate Pursuant to <u>Jones v. Kmart</u>**

24   Defendant next argues that Plaintiff's action is barred by the California Supreme Court's

25   decision in Jones v. Kmart, because the undisputed facts show Lowe's did not interfere with

26   Plaintiff's exercise of his right to be free from unreasonable search and seizure, through violence,

27   threats, intimidation, coercion, or otherwise.   Defendant notes that while it is true that Cornell,

28   supra, and subsequent cases have held a Bane Act plaintiff need not show threats, coercion, or

violence, beyond the allegedly false arrest itself because an arrest is inherently coercive, those cases are inapposite because they involve government defendants.    However, where the defendant is a private party and not a government entity, Defendant submits that a plaintiff must in fact prove that the defendant used violence, threats, coercion, or intimidation beyond that inherent in a government seizure, with a specific intent of interfering with Plaintiff's ability to assert his Fourth Amendment rights against the government.    The Court agrees and finds the undisputed facts here establish that summary judgment is appropriate pursuant to Jones v. Kmart.

Plaintiff Jones, "an African-American, aroused the suspicion of a Kmart employee who believed he might be shoplifting."    Jones v. Kmart, 17 Cal. 4th at 331.    Kmart employees pursued him out of the store and he was violently seized and searched following a physical struggle, causing injuries. Id. at 331-332. It was ultimately determined he did not shoplift. Id. at 332.    The jury returned a verdict in favor of Jones and against Kmart and its employees, including on his Bane Act claim, and awarded damages and attorneys' fees for the interference with his constitutional rights. Id. The Court of Appeal overturned that portion of the verdict awarding damages and attorney fees for the alleged Bane Act violation, and the California Supreme Court affirmed. Id. The court noted the proscription against unreasonable search and seizure under the Fourth Amendment applies only to the acts of government officers or their agents, and that similarly, the right to be free from unreasonable search and seizure in article I, section 13 of the California Constitution, is also subject to a state action requirement. Id. at 333.

Defendant highlights that in Jones v. Kmart, Jones produced evidence that Kmart employees conducted an "aggressive search and seizure." (Mem. 19, citing Jones, 17 Cal.4th at 334.)    The California Supreme Court presented a hypothetical example of where the circumstances might state a claim, but found that even with a physical search and seizure in the case before it, there was no interference by the private parties with any state action violating the Fourth Amendment or California Constitution:

> Section 52.1 nowhere mentions state action. But section 52.1 does require an attempted or completed act of interference with a legal right, accompanied by a form of coercion. Plaintiffs produced no evidence that defendants interfered with Jones's rights against unreasonable search and seizure. When they assert that defendants

interfered with those rights by directly violating them, they are mistaken: Only the government or its agents can do so.

We recognize that because section 52.1 proscribes attempted or completed interferences with rights secured by law, it may provide a cause of action based on such rights when a private actor interferes with them or attempts to do so by coercion, even if the wrongdoer could not violate them directly. For example, if a burglary victim, suspecting that his stolen property lay hidden in a nearby house, stood at the door with the police and threatened to injure the homeowner if she did not change her mind and consent to an official and warrantless search of her premises, the homeowner might, under section 52.1, be able to sue her neighbor for interfering with her Fourth Amendment rights, assuming for purposes of this example that the Fourth Amendment protected her against warrantless searches by the state without her consent under the circumstances. For another example, the right to vote (*Burdick v. Takushi* (1992) 504 U.S. 428, 441 [112 S.Ct. 2059, 2067, 119 L.Ed.2d 245]) includes a right to vote, under the Fifteenth, Nineteenth and Twenty-fourth Amendments to the United States Constitution, free of certain burdens (*Ex parte Yarbrough* (1884) 110 U.S. 651, 664-665 [4 S.Ct. 152, 158-159, 28 L.Ed. 274]; *Williams v. Rhodes* (1968) 393 U.S. 23, 29 [89 S.Ct. 5, 9-10, 21 L.Ed.2d 24]). To the extent that the right to vote is guaranteed by the federal Constitution, or by other "laws" (§ 52.1), a private actor's coercive attempted or completed interference with it might be actionable under section 52.1.

But this case does not present a similar situation. Plaintiffs in effect pleaded interference with the Fourth Amendment to the United States Constitution and article I, section 13, of the California Constitution. Yet they only presented evidence that defendants themselves conducted an aggressive search and seizure. However rough defendants' treatment of Jones may have been, it did not interfere with his ability to assert his rights under those constitutional guaranties. Those rights were not put in jeopardy in this dispute, as they might have been if defendants had called the police and then coercively interfered with Jones's Fourth Amendment rights when he attempted to exercise them *against the police*. Because plaintiffs presented no evidence that defendants interfered with Jones's constitutional rights as pleaded, they were not entitled to the instructions the court gave under section 52.1. "A party is not entitled to an instruction on a theory for which there is no supporting evidence." (*People v. Memro* (1995) 11 Cal.4th 786, 868 [12 Cal.4th 783d, 47 Cal.Rptr.2d 219, 905 P.2d 1305].)

Jones v. Kmart, 17 Cal. 4th at 334–35.

The Court agrees with Defendant that the physical confrontation described in Jones is at least within the ambit of the type of conduct proscribed by the Bane Act, unlike the conduct of the Lowe's employees in this case who merely declined to exchange merchandise without a

receipt and who made a crime report to the police but never themselves confronted Plaintiff about the crime.  The Court further agrees that Jones v. Kmart is persuasive to the facts at hand given there, the court noted that even with physical actions, there was no evidence the Kmart employees "coercively interfered with Jones's Fourth Amendment rights when he attempted to exercise them *against the police*."  Id. (emphasis in original).  This principle is reinforced and demonstrate by the example offered by the California Supreme Court, where, a hypothetical burglary victim, suspecting that his stolen property was in a neighbor's home, stood at the door with the police and *personally* threatened physical violence against the neighbor if she did not consent to a warrantless police search of her home.  Thus, in that hypothetical, while the defendant himself was not subject to the Fourth Amendment, he could potentially be liable under the Bane Act for using threats, intimidation, or coercion to interfere with his neighbor's ability to assert her Fourth Amendment rights against the police by objecting to a warrantless search.

The Court concludes that under the undisputed facts, Defendant is not liable under the Bane Act for a violation of Plaintiff's Fourth Amendment rights by the act of making a report to the police which resulted in an investigative stop outside the store, and that instigated a police investigation which in turn resulted in Plaintiff's arrest a month later after the police independently determined there was probable cause.  Under Jones v. Kmart, the Fourth Amendment does not apply to Lowe's and Plaintiff has not produced any admissible evidence that any Lowe's employee used violence, threats, intimidation or coercion so as to interfere with Plaintiff's Fourth Amendment right to object to either the investigative stop or his subsequent arrest.

Accordingly, in addition to being barred by California Civil Code section 47(b), the Court finds Plaintiff's Bane Act claim is also barred by the California Supreme Court's holding in Jones v. Kmart, based on the undisputed facts established by the evidence before the Court.  Additionally, as the Court finds in the next section, Plaintiff cannot establish essential elements of the Bane Act cause of action and summary judgment is appropriately granted on those grounds as well.

**c.      Plaintiff cannot Establish Essential Elements of the Bane Act Cause of Action**

Defendant argues Plaintiff must first establish that Lowe's violated a constitutional or other statutory right.  Lawman, 159 F. Supp. 3d at 1151 (quoting Campbell v. Feld Entm't, Inc., 75 F.Supp.3d 1193, 1211 (N.D.Cal.2014) ("Only if [Lawman] can first establish that Defendants violated a constitutional or statutory right can the Court consider whether such interference was the product of threats, intimidation, or coercion.")).  As noted above, in the context of alleged unlawful arrest, a Bane Act claim "requires a 'specific intent to violate the arrestee's right to freedom from unreasonable seizure.' "  Reese , 888 F.3d at 1043 (quoting Cornell, 17 Cal. App. 5th at 800, 225).  As the Ninth Circuit explains, specific intent is required to establish a Bane Act violation for a Fourth Amendment violation of unreasonable search and seizure:

> Cornell also makes clear, however, that the Bane Act imposes an additional requirement beyond a finding of a constitutional violation. Cornell explained that "[p]roperly read, the statutory phrase 'threat, intimidation or coercion' serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief." Id. at 383. Accordingly, Cornell held that "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure." Id. at 384.  In so holding, Cornell adopted the specific intent standard established in Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), for assessing criminal violations of federal civil rights.[4] 225 Cal.Rptr.3d at 384–85.
>
> Thus, based on the weight of this new state authority, and our obligation to consider the California Court of Appeal's thorough analysis of its own law, we draw two conclusions as to the necessary showing for an excessive force claim under the Bane Act. First, the Bane Act does not require the "threat, intimidation or coercion" element of the claim to be transactionally independent from the constitutional violation alleged. Cornell, 225 Cal.Rptr.3d at 382–83. Second, the Bane Act requires a "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." Id. at 384.

Reese, 888 at 1043.  In this regard, the Court agrees with Defendant that Plaintiff cannot show that Lowe's itself interfered with his rights under the Fourth Amendment or its California constitutional analog.  Under Jones v. Kmart, Lowe's was not a state actor and not subject to

1   those constitutional provisions.   17 Cal.4th at 333.   The Court agrees that based on the

2   undisputed facts established by the evidence before the Court, Plaintiff cannot show that any

3   Lowe's employee interfered with his ability to object to the investigatory stop or his arrest on

4   Fourth Amendment grounds.

5       Additionally, the Court agrees that the undisputed material facts establish that Lowe's

6   employees did not engage in any conduct that was itself violent or which threatened violence,

7   intimidation, or coercion, should plaintiff seek to exercise his Fourth Amendment rights against

8   the police, either on November 10, 2018, or following his arrest weeks later.   While Plaintiff has

9   claimed that some employees spoke to him "aggressively" in the store and one employee stood

10  near him with his arms folded in an "intimidating" manner, Plaintiff admits that all of this

11  alleged conduct related to the attempted return, and occurred prior to the arrival of the police.

12      Further, the Court agrees that the evidence establishes that Defendant's conduct in this

13  case was only speech directed not at Plaintiff but to the police, and that speech alone will not

14  support a Bane Act claim unless the speech itself threatens violence against a person, the person

15  reasonably believes that because of the speech, violence will be committed against him, and

16  defendant had the apparent ability to carry out the violence.   See Cal. Civ. Code § 52.1(k)

17  ("Speech alone is not sufficient to support an action brought pursuant to subdivision (b) or (c),

18  except upon a showing that the speech itself threatens violence against a specific person or group

19  of persons; and the person or group of persons against whom the threat is directed reasonably

20  fears that, because of the speech, violence will be committed against them or their property and

21  that the person threatening violence had the apparent ability to carry out the threat.").   Here, the

22  undisputed material facts establish that Defendant did not nothing more than tell the police a

23  crime had been committed by unknown suspects, and one of those unknown suspects returned to

24  the store.   Not only was this speech not directed at Plaintiff, there simply is no threat of actual

25  violence inherent in that speech.[10]

---

26  [10] Defendant also argues that nor could Plaintiff have reasonably apprehended that because of Lowe's speech to the
27  police, violence would be committed against him, as Plaintiff was not present and admits he does not have any
    personal knowledge of what Budrow reported to the police other than what he read later, after his arrest, in
    documents prepared by others.   Defendant also notes that Plaintiff has repeatedly claimed in this case that when he
28  was stopped him outside the store on November 10, 2018, Officer Mallon pointed back at the store and said

1   Last, the Court agrees that Plaintiff cannot establish the specific intent element required

2   for a Bane Act violation.  Again, the only conduct chargeable to Defendant in this case is: (1)

3   reporting a crime on November 3, 2018; (2) securing video evidence  of that crime; (3) preparing

4   a report to be sent to Lowe's ORC department (which report was prepared a week before

5   November 10, 2018 and does not even identify Plaintiff); (4) advising the police that a person

6   resembling one of the suspects had returned to the store on November 10, 2018; and (5) turning

7   over video evidence and a copy of the internal ORC report to the police.  The Court agrees that

8   even setting aside the fact that neither Lowe's report nor the video evidence actually accuse

9   someone named Stanley Redick of committing any crime; none of these facts can support a

10  reasonable inference that Lowe's conduct was motivated by a specific intent to deprive Plaintiff

11  himself of any constitutional right.  Reese, supra, 888 F.3d at 1043.

12   Ultimately, for the above reasons, the Court concludes in agreement with Defendant that

13  Plaintiff cannot establish essential elements of his sole cause of action for violation of the Bane

14  Act, and Defendant is entitled to summary judgment.

15   **C.    Plaintiff's Motion for Summary Judgment Must Be Denied**

16   Based on review of Plaintiff's motion for summary judgment, the evidence cited therein,

17  and the Defendant's opposition, the Court finds Plaintiff's motion for summary judgment must

18  be denied.

19   1.    Plaintiff's Proffer of Undisputed Facts

20   Plaintiff proffers the following facts are undisputed[11]:

21   1.    On November 10, 2018, the Defendant accused Plaintiff of a crime Plaintiff did

22  not commit.[12]

23

---

24  something to the effect of "they are accusing you of stealing," and thus setting aside hearsay problems, argues nothing about that statement can be interpreted as a threat that Plaintiff would be subjected to violence should he

25  raise a Fourth Amendment objection to the investigatory stop, and on its face, the alleged statement by Officer Mallon does nothing more than explain why Plaintiff was being stopped.  The Court agrees.

26  [11]  The Court makes minor grammatical and capitalization changes to the Plaintiff's statements that do not constitute

27  substantive changes.

28  [12]  The electronically filed copy reads "of a crime I did Commit," however, the Court presumes this is a scanning error or Plaintiff meant to write the opposite.  (ECF No. 54 at 1.)

2.      Plaintiff was arrested and incarcerated for crimes he did not commit, because of the Defendant's false accusations against Plaintiff on November 10, 2018.

3.      On November 10, 2018, the Defendant's corrosive nature and intent to hold Plaintiff accountable for crimes I did not commit was apparent when the Defendant called the Sonora Police Department and stood at the exit Door of Lowe's Home Centers LLC upon the arrival of Mr. Mallon to ensure Plaintiff was identified by the Defendant as the Subject to be question and to be accused of committing a crime at the Defendant's place of business on November 3, 2018, obstructing my Freedom and violating my Civil Rights.

4.      The Defendant's Declarations made by Sarah D. Budrow in support of Defendant's defense contradict each other as to what initially transpired on November 3, 2018, falsely stating that Mr. Mallon was in her office reviewing videos from November 3, 2018, when the officer from the Sonora Police Department, Mr. Mallon was clearly not in her office prior to being dispatched, therefore showing the Defendant's intent to falsify documents in a corrosive nature to hold me accountable for crimes I did not commit.

5.      The Defendants accused me the Plaintiff of attempting to return stolen merchandise for profit, which was never my intent on November 10, 2018, as I was with my client to exchange defective flooring for more flooring to complete my job for my client.

6.      On November 10, 2018, Mr. Mallon informed me that the Defendant called the Sonora Police Department accused me the Plaintiff of committing a crime on November 3, 2018, as the reason I was being stopped and questioned for said crimes.

7.      Mr. Bowley who wrote the report for Mr. Mallon has faced disciplinary action with the Sonora Police Department, leaving Mr. Bowley's ability to properly use due process, in question when it comes to working with the Defendant to get a warrant issued for me the Plaintiff in this case since both the Defendant and Mr. Mallon were intending to hold me accountable for crimes I did not commit.

8.      The Defendant pursued my prosecution multiple times in the criminal proceedings against me in the criminal case prior to the case being dismissed.

9.      I the Plaintiff was not at Lowe's Home Centers LLC on November 3, 2018.

10.     I was incarcerated multiple times, once with murderers because of the intentional false accusations against me done by the Defendants.

11.     Budrow was standing at the entrance door of Lowe's Home Centers LLC on November 10, 2018, in a corrosive nature intending to hold me the Plaintiff accountable for the crimes committed on November 3, 2018.

12.     Budrow was objected to when I the Plaintiff attempted to have her served as a witness in this case by the Defendant.

13.     Should the Court review all of Budrow's declarations used to support the Defendant's defense, the Court would find multiple contradictory statements made by the Defendant, further resulting in the corrosive and intentional harm the Defendant was willing to use to hold me accountable for crimes I did not commit.

14.     The Defendant stated to police that I committed crimes I did not commit.

15.     The Defendant had the video evidence to exonerate me as subject but continued to pursue my prosecution for crimes I did not commit.

16.     The Defendant accused me the wrong person of committing a crime from November 3, 2018, verbally verified by Mr. Mallon in the body cam evidence in this case.

17.     The Defendant attempted to quash the body cam evidence of Mr. Mallon.

18.     The Defendant caused damage to me the Plaintiff and innocent victim in this case, leaving me to fight for my freedom over 2 years in state criminal court, facing trial multiple times and being incarcerated having to pay for bail and a private attorney after firing three public defenders and one court-appointed attorney in this case.

19.     Defendant caused unrepairable damage emotionally, monetarily, and professionally for Plaintiff in this case.

20.     The Defendant intended to hold me accountable for the theft on November 3, 2018, and crimes on November 10, 2018.

21.     Plaintiff has never committed a crime at Lowe's Home Centers LLC Sonora California and the Defendants are liable for the damage caused to me the Plaintiff in this case.

2.     <u>Plaintiff's Arguments</u>

1    Plaintiff first cites Massachusetts state law pertaining to general standards for summary

2    judgment that are not directly applicable but appear similar to the federal standards.  (Pl.'s Mot.

3    4.)  Plaintiff then submits that the Defendant interfered with his federal, state and constitutional

4    rights a second time when they stood at the entrance to Lowe's in an aggressive manner

5    surrounding Plaintiff with the police officer they contacted that prevented Plaintiff from

6    exercising his rights.  Plaintiff argues that he has been harmed by the Defendants and left with

7    irreparable damage.  Plaintiff argues the Defendant's conduct was a substantial factor in causing

8    him harm in this case as he lost two years of his life defending crimes he did not commit, lost

9    wages, lost credibility with business associates, and now has a genuine fear of being in public,

10   afraid he is being watched, being judged, and has sleepless nights afraid he will go to prison or

11   that the cops are after him because of the Defendant's conduct starting November 10, 2018

12   toward Plaintiff, the innocent victim in this case.  (Pl.'s Mot. 5.)

13   Plaintiff does not clearly proffer legal arguments in the legal references section, but of

14   note, appears to argue that it is not necessary to show that a defendant actually kept a plaintiff

15   from exercising their rights, but an attempt to keep one from exercising their rights can lead to

16   liability under the Bane Act, Austin B., 149 Cal.App.4th 860.

17       3.    Defendant's Opposition

18   First, Defendant submits that Plaintiff's motion is procedurally and substantively

19   defective.  (Def.'s Opp'n 5-6.)  The Court largely agrees, however, for the reasons and legal

20   standards outlined and expressed above, the Court has attempted to adjudicate the motions before

21   it based on the merits, the evidence before it, and the applicable legal standards.  Nonetheless,

22   many of the deficiencies highlighted by Defendant do in part lend to the Court necessarily

23   denying Plaintiff's motion for summary judgment, as they collectively add to a finding of

24   Plaintiff's motion not having merit.  Specifically, Defendant notes: Plaintiff did not set the

25   motion for hearing or provide notice of a hearing date; Plaintiff did not meet and confer in order

26   to create a joint statement of undisputed facts as required by the Court's scheduling order (ECF

27   No. 44); Plaintiff failed to comply with Federal Rule of Civil Procedure 56(c)(1) that requires a

28   party asserting a fact is undisputed to support such by citation to particular parts of the record,

1  including deposition, documents, declarations, or discovery responses; and further as to Rule 56,

2  in addition to Defendant's evidentiary objections to the evidence offered, Plaintiff has failed to

3  cite to any particular portions of that evidence or explain how it is relevant to proving any

4  material issue raised by Plaintiff's motion.  The motion also does not comply with Local Rule

5  260, which requires that all such motions be accompanied by a "Statement of Undisputed Facts"

6  that "shall enumerate discretely each of the specific material facts relied upon in support of the

7  motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory

8  answer, admission, or other document relied upon to establish that fact."  L.R. 260(a).

9           The Court agrees that Plaintiff's proffered undisputed facts are not connected to cited

10 evidence for those facts, forcing the Defendant and the Court to speculate and that in whole,

11 Plaintiff's motion is only factual contentions unsupported by admissible evidence, and

12 submissions of inadmissible evidence without any demonstrated relevance or probative value to

13 the applicable legal standards that would warrant the granting of summary judgment.

14 Specifically, Defendant highlights the thumb drive submitted to the Court containing video

15 evidence was not served on Defendant and thus Defendant cannot evaluate the accuracy or

16 admissibility, and it was not authenticated.  As for the Budrow declarations, Defendant argues

17 Plaintiff fails to show how that declaration is contradicted beyond Plaintiff's own conclusory

18 assertions and does not point to admissible evidence that contradicts the declaration, nor shows

19 how any contradiction is material to any issue raised in the motion.  Defendant agues the

20 remainder of the evidence submitted by Plaintiff consists of some unauthenticated photographs

21 and a few unauthenticated pages from a purported police report, and Plaintiff makes no reference

22 to this evidence in the moving papers, let alone points to anything specific in the exhibits or

23 explains how they establish any material fact or support the arguments in the moving papers.

24           4.       The Court Denies Plaintiff's Motion

25           Plaintiff seeks summary judgment on his sole cause of action for violation of the Bane

26 Act, California Civil Code § 52.1.   The Court above discussed the various legal standards

27 applicable to the Bane Act claim.  Based on a review of Plaintiff's motion, the arguments

28 contained therein, as well as Plaintiff's submitted evidence, the Court finds Plaintiff has failed to

1    meet his burden and summary judgment is appropriately denied.  See Fed. R. Civ. P. 56(a);

2    Celotex Corp., 477 U.S. at 322 (""[A] party seeking summary judgment always bears the initial

3    responsibility of informing the district court of the basis for its motion, and identifying those

4    portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

5    together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

6    of material fact."); Tovar v. U.S. Postal Serv., 3 F.3d 1271, 1279 (9th Cir. 1993) ("[B]are

7    assertions or unsupported conclusions are not facts sufficient to support either a summary or a

8    post-trial judgment."); Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099,

9    1102–03 (9th Cir. 2000) ("If a moving party fails to carry its initial burden of production, the

10   nonmoving party has no obligation to produce anything, even if the nonmoving party would have

11   the ultimate burden of persuasion at trial.").  Plaintiff's motion is not supported by evidentiary

12   facts established by testimony, discovery, declarations, or admissible documentary evidence.

13   Plaintiff's motion fails to satisfy his evidentiary burden on summary judgment.  Plaintiff only

14   proffers conclusory allegations unsupported by any admissible evidence.

15                                              **V.**

16                               **CONCLUSION AND ORDER**

17        For the reasons explained above, the Court finds Defendant has submitted sufficient

18   evidence in support of their undisputed facts, that Plaintiff has insufficiently disputed any of the

19   Defendant's proffered undisputed facts in a manner that would alter the applicability of the

20   controlling law above, and therefore finds under the applicable legal standards and the undisputed

21   facts established by the evidence, that Defendant's motion for summary judgment is properly

22   granted as to Plaintiff's Bane Act claim.  The Court further finds that Plaintiff's motion for

23   summary judgment is properly denied as to the Bane Act claim.

24        Accordingly, IT IS HEREBY ORDERED that:

25        1.    Defendant Lowe's Home Centers, LLC's motion for summary judgment, (ECF

26              No. 57), is GRANTED;

27        2.    Plaintiff Stanley E. Redick III's motion for summary judgment, (ECF No. 54), is

28              DENIED;

3.      This action is DISMISSED in its entirety, on the merits, with prejudice; and

4.      The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Lowe's Home Centers, LLC, and against Plaintiff Stanley E. Redick III, and close this action.

IT IS SO ORDERED.

Dated:   **December 1, 2022**

UNITED STATES MAGISTRATE JUDGE